STATE *ex rel* C. F. TURNER v. N. A. BALTZELL, SHALER
A. RICHARDSON, A. WILLIAM MORRISON, as and Consti-
tuting the FLORIDA STATE BOARD OF HEALTH, and N. A.
BALTZELL, as President of the Florida State Board of
Health, and A. B. McCREARY, as State Health Officer and
as such as Secretary of the said State Board of Health,
and the said THE STATE BOARD OF HEALTH.

197 So. 783
En Banc
Opinion Filed September 20, 1940
Rehearing Denied October 7, 1940

*Fred M. Valz* and *Sam B. Stearns,* for Relator.

*George Couper Gibbs,* Attorney General, and *J. Compton
French,* Assistant Attorney General, for Respondents.

TERRELL, C. J.—Alternative writ of mandamus was di-
rected to respondents commanding them to rescind a rule
promulgated December 17, 1939, whereby they provided that
specimen containers, biological products, and laboratory
services be furnished to doctors of medicine, osteopaths, and
dental surgeons only and that such services be denied doc-

tors of naturopathy or to show cause why they refuse to do, so. Respondents have moved to quash the alternative writ.

The question presented is whether or not respondents acting as the State Board of Health may furnish the laboratory services named in the rule to the designated classes of the healing art and refuse them to doctors of naturopathy, relator being one of the latter school.

There is no controversy about the essential facts from which this litigation arises. It is admitted that relator is a duly licensed Naturopath and that Naturopathy or Naturopathic treatment is recognized as one of the healing arts by the laws of Florida. The power of respondent to promulgate the rule is not challenged; the discrimination that it works against Naturopaths is the thing that relator calls in question. To defeat relator's contention, respondents say that mandamus is not the proper remedy, that he should have resorted to mandatory injunction, that there is no clear legal duty on the part of respondents to furnish the service proposed to Naturopaths, that Naturopaths are not required to and do not meet the educational qualifications required of other practitioners of the healing art and are therefore not entitled to the benefit of the services sought to be enforced.

There may be a basis for controversy as to whether mandamus or some other remedy could not have as well been employed but we indulge in no refinements on this point. More than one remedy is often available to one who initiates a cause in court and while some other might have served the purpose as well, we hold mandamus to be appropriate here. The remedy is merely the vehicle by which we proceed to the truth of the controversy and ascertain the measure of justice. Chasing technical distinctions between remedies gets us nowhere, it often clouds the main issue

in a congeries of muddy babble or failing in this, it has been known to bind and befuddle bench and bar in their own dialectic to such an extent that the real purpose of the litigation is lost sight of. Let us therefore bear in mind that the ultimate question here turns on the answer to that of whether or not there was a proper basis for the discrimination shown to have been worked against relator by the rule complained of.

Naturopathic treatment was authorized in Florida by Chapter 12286, Acts of 1927. By the terms of the Act, Naturopaths are not permitted to practice materia medica, surgery, or chiropractic. It is defined as: " * * * the use and practice of psychological mechanical and material health sciences to aid in purifying, cleansing and normalizing human tissues for the preservation or restoration of health, according to the fundamental principles of anatomy, physiology and applied psychology, as may be required. Naturopathic practice employs, among other agencies, phytotherapy, dietetics, psychotherapy, suggestotherapy, hydrotherapy, zone-therapy, bio-chemistry, external applications, electro-therapy, mechano-therapy, mechanical and electrical appliances, hygiene, first aid, sanitation and heliotherapy:"

It is true that the statute limits the practice of Naturopathy to the application of the named agencies but its scope in the use of them is so general as to place it in the category of one of the important schools of the healing art. And who knows that its pathologic processes will not in the near future be the approved ones for the treatment of many diseases. The medical profession has surpassed all others in keeping step with scientific advancement; approved methods of today are antiquated and discarded tomorrow for better ones. The physician of today is by odds the best equipped technician that the learned professions have produced, but

it has not been so long since the family doctor slept on a flock bed, cauterized with smut and cobwebs, carried his pills in his pocket with his loose change, prescribed sassafras tea to "break out" the measles, and as for bacteriology, metabolism, biochemistry, and vitamins, now considered such an essential part of his equipment, the last generation knew no more of them than Billy Bowlegs knew about theology.

The services which relator seeks to enforce have reference to the instrumentalities and facilities furnished members of the named schools of the healing art to aid in prognosis and therapeutic observations. They may suggest the method of treatment but are mainly for testing and experimentation. Many of the great discoveries in the art of healing have been wrought by experiment. In fact, some things must be learned by experience and since this is true, the door cannot be opened to one school and closed to another. Except in the method of treatment, it is entirely possible that the therapeutic processes of the school of materia medica and the school of naturopathic practice would in some cases overlap. At any rate, both schools are licensed and recognized by the law of this State and since the service is one furnished by the State, we do not think relator can be discriminated against in the manner shown. There is no showing whatever that he is lacking in the essentials of his art.

The motion to quash is therefore overruled.

WHITFIELD, BUFORD and CHAPMAN, J. J., concur.

THOMAS, J., dissents.

Justice BROWN not participating as authorized by Section 4687, Compiled General Laws of 1927, and Rule 21-A of the Rules of this Court.

THOMAS, J. (dissenting).—I agree that the services described in the opinion of the Court should be made avail-

able to the relator but I dissent from the conclusion reached because of my view that mandamus to coerce the rescission of the rule promulgated by respondents is not the proper remedy.